# United States Court of Appeals for the Federal Circuit

05-7116

WILLIAM J. KELLY,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Richard R. James, of Glen Allen, Virginia, argued for claimant-appellant. On the brief was Sandra E. Booth, of Columbus, Ohio.

Marla T. Conneely, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and Martin J. Sendek, Staff Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Jonathan R. Steinberg (Retired)

# United States Court of Appeals for the Federal Circuit

05-7116

WILLIAM J. KELLY,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  September 13, 2006

_____

Before NEWMAN, MAYER, and RADER, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> MAYER.  Dissenting opinion filed by <u>Circuit Judge</u> RADER.

MAYER, <u>Circuit Judge</u>.

William J. Kelly appeals the judgment of the United States Court of Appeals for Veterans Claims denying his application for reimbursement of legal fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  <u>Kelly v. Principi</u>, No. 99-191(E) (Ct. App. Vet. Cl. Oct. 28, 2004).  We reverse and remand.

Background

In May 1989, Kelly filed a claim that he had balance problems and had been exposed to Agent Orange during his service in Vietnam. The Department of Veterans Affairs ("VA") Regional Office ("RO") subsequently informed him that his submission was insufficient and that he was required to specify a disability. Kelly responded that he suffered from "a developmental nerve problem" that required him to stop working. He said he was being treated but had not received a diagnosis from his doctors. VA made a progress note in July 1989 of "hypertension and ataxia, post Agent Orange," and Kelly underwent a VA examination in November 1989, which diagnosed him with dysthimia, secondary type and cerebellar ataxia. He also underwent a VA neurology examination in July 1990, which noted an impression of ataxia and a possibility of olivopontocerebellar atrophy ("OPCA"). He was again examined in August 1990 and was diagnosed with OPCA. He also submitted a July 1982 medical record from a private hospital indicating that he suffered from chronic cerebral ataxia of undetermined etiology. See Kelly v. Principi, No. 99-191 (Ct. App. Vet. Cl. Feb. 6, 2004) (providing a summary of medical evidence before the VA).

The RO issued a rating decision in April 1994 denying Kelly's service connection claim. It stated that Kelly claimed service connection for an unnamed condition manifested by weakness in the legs, and the condition was subsequently diagnosed as OPCA. Kelly appealed the RO's decision to the Board of Veterans' Appeals, expressing disagreement with the "denial of his claim [for service connection] [ ] exposure to Agent Orange." The board remanded the claim for additional development and directed the

RO to have Kelly examined by a neurologist "[i]f and only if [Kelly's] claim is found to be well grounded."

On remand, the RO obtained additional medical documentation. Kelly also underwent a brain and spinal cord VA examination in December 1997. The RO again concluded that olivopontocerebellar degeneration was an appropriate diagnosis and that it was a familial disorder with no known relationship to Agent Orange exposure. The case was returned to the board, which concluded Kelly's claim was not well grounded and thereby denied entitlement "to service connection for olivopontocerebellar atrophy." In re Kelly, No. 99-191 (Bd. Vet. App. Dec. 31, 1998). The board reasoned that there was "no competent evidence that [his OPCA] was present in service, compensably disabling within one year after separation from service or otherwise related to service, including herbicide exposure." Id. at 3. It also noted that his condition was not one that is presumed to result from Agent Orange exposure. Id. at 9.

Kelly appealed to the Veterans Court. While the appeal was pending, the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, was enacted. In light of this, on January 5, 2001, the court vacated and remanded the board's decision with respect to the "claim for . . . service connection for [OPCA]." Kelly also argued that the RO and board had failed to consider his diagnosis of cerebellar ataxia. The court, however, said that his notice of disagreement ("NOD") was insufficient to confer it with jurisdiction over that claim. Kelly v. Gober, No. 99-191 (Ct. App. Vet. Cl. Jan. 5, 2001).

Kelly then filed a motion for reconsideration and for panel review. The government opposed both requests. The motion for reconsideration was denied in a

single-judge order, which again concluded that the NOD was inadequate to confer jurisdiction over Kelly's ataxia claim. Kelly v. Principi, No. 99-191 (Ct. App. Vet. Cl. Oct. 10, 2001). On February 28, 2002, the motion for panel review was granted. In light of Congress' repeal of the NOD jurisdiction requirement on December 27, 2001, Veterans Education and Benefits Expansion Act of 2001, Pub. L. No. 107-103, § 603(a), 115 Stat. 976, 999, the panel reinstated Kelly's appeal with respect to his ataxia claim. The panel said that although it reinstated the appeal on the ataxia ground, it made "no determination as to (1) whether [he] ever made any formal or informal claim for service connection for ataxia; (2) if [he] did make such a claim, whether that claim was reasonably raised to the Board; and (3) if [he] did not reasonably raise that claim to the Board, whether there is a final Board decision as to any such claim that is reviewable by this Court." Kelly v. Principi, No. 99-191 (Ct. App. Vet. Cl. Feb. 28, 2002).

The case was returned to the original judge who noted that the original remand with respect to what he termed the "OPCA service-connection claim" remained operative. With respect to the ataxia diagnosis, which the panel had reinstated, the court stated that Kelly "essentially argues that his symptomotology – balance problems and a developmental nerve problem, for which he received treatment at a VA hospital . . . in October 1989, and for which he applied for service connection in May 1989 – is attributable to ataxia, as to which the record on appeal contains a VA diagnosis rendered on July 13, 1989 and again on November 14, 1989." Kelly v. Principi, No. 99-191, at 2 (Ct. App. Vet. Cl. Feb. 6, 2004) ("Ataxia Remand Order") (citations omitted). In light of this discussion, it held that "[Kelly's] pending claim for service connection for neurological problems related to Agent Orange exposure has

never been limited to a particular diagnosis in such a way as to preclude him from having VA develop his claim for a possible ataxia diagnosis and consider whether such a condition should be awarded service connection." Id. at 3. The court, however, declined to address this issue in the first instance and remanded it, stating: "If [he] raises to the Board an argument that his ataxia resulted in his symptoms, the Board (and RO, after any appropriate remand thereto) must consider that argument. In addition, . . . the Board (and the RO) must fully develop the ataxia matter as well as [his] OPCA claim in accordance with 38 U.S.C. §§ 5103(a) and 5103A and 38 C.F.R. § 3.159 before readjudicating the case, and then must reach a conclusion on that matter." Id.

Kelly filed an application for reimbursement of attorneys' fees and expenses under EAJA for his ataxia claim. The Veterans Court denied the application, determining that he was not a "prevailing party." Kelly v. Principi, No. 99-191, at 2 (Ct. App. Vet. Cl. Memorandum Decision Oct. 28, 2004; Judgment Dec. 21, 2004) ("EAJA Order"). Kelly appeals, and we exercise jurisdiction pursuant to 38 U.S.C. § 7292(a).

## Discussion

We review the Veterans Court's interpretation of EAJA de novo. Vaughn v. Principi, 336 F.3d 1351, 1354 (Fed. Cir. 2003). Our review is limited by statute, under which we "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d). However, unless addressing a constitutional issue, we may not review factual determinations or the application of law to the facts. Id. at § 7292(d)(2). "We have recognized, however, that where adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, we may address that issue as a question of law." Halpern v. Principi, 384 F.3d 1297,

05-7116                                    5

1306 (Fed. Cir. 2004) (citing <u>Brandenburg v. Principi</u>, 371 F.3d 1362, 1363 (Fed. Cir. 2004); <u>Bailey v. Principi</u>, 351 F.3d 1381, 1384 (Fed. Cir. 2003)).

Under EAJA, a "prevailing party" in a civil action is entitled to attorneys' fees and expenses unless the government's position was substantially justified. 28 U.S.C. § 2412(d)(1)(A).[*] "The essential objective of the EAJA [is] to ensure that persons will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in the vindication of their rights . . . ." <u>Johnson v. Gonzales</u>, 416 F.3d 205, 208 (3d Cir. 2005) (quoting <u>Clarke v. Immigration & Naturalization Serv.</u>, 904 F.2d 172, 178 (3d Cir. 1990)); <u>see also</u> <u>Sullivan v. Hudson</u>, 490 U.S. 877, 883 (1989). Removing such deterrents is imperative in the veterans benefits context, which is intended to be uniquely pro-claimant, <u>Hodge v. West</u>, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998) (citations omitted); <u>Collaro v. West</u>, 136 F.3d 1304, 1309-10 (Fed. Cir. 1998), and in which veterans generally are not represented by counsel before the RO and the board, <u>see</u> 38 U.S.C. § 5904(c)(1) (prohibiting attorneys' fees prior to a final board decision). EAJA is a vital complement to this system designed to aid veterans, because it helps to ensure that they will seek an appeal when

---

[*]     28 U.S.C. § 2412(d)(1)(A) provides:
Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

the VA has failed in its duty to aid them or has otherwise erroneously denied them the benefits that they have earned.

To be considered a "prevailing party" entitled to fees under EAJA, one must secure "some relief on the merits." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001); Former Employees of Motorola Ceramic Prods. v. United States, 336 F.3d 1360, 1364 (Fed. Cir. 2003) ("Former Employees of Motorola"). Securing a remand to an agency can constitute the requisite success on the merits. "[W]here the plaintiff secures a remand requiring further agency proceedings because of alleged error by the agency, the plaintiff qualifies as a prevailing party . . . without regard to the outcome of the agency proceedings where there has been no retention of jurisdiction by the court . . . ." Former Employees of Motorola, 336 F.3d at 1366.

Here, Kelly initially filed a claim for service connection for his balance problems and exposure to Agent Orange, and he later clarified that he suffered from "a developmental nerve problem." The medical records before the RO and board contained two diagnoses for his claim, OPCA and ataxia. These diagnoses were not separate claims, merely two means of establishing the same end – the service connection claim – and, as the Veterans Court noted in denying his EAJA claim, Kelly never limited his claim to a single theory, Ataxia Remand Order at 2. However, the RO only considered the OPCA diagnosis in denying Kelly's service connection claim.

In light of this history, the Veterans Court determined that its remand for consideration of the ataxia diagnosis was not based on agency error and denied Kelly's motion for fees. This conclusion stems from an erroneous interpretation of the pre-

VCAA statutes defining the VA's duties, particularly 38 U.S.C. § 5107(b).[**]  Subsection

5107(b) requires the VA to consider "all evidence and material of record in a case"

before deciding the "merits of an issue material to the determination of the matter."  This

requirement applies not only to decisions relating to the overall merits of a claim, but by

its plain language it applies to all decisions determining any material issue relating to

the claim.  Thus, the VA was obligated to consider all evidence of record before

deciding whether Kelly's claim was well grounded.  Although our precedent holds that

the duty to assist veterans under pre-VCAA law does not arise until the veteran

establishes a well-grounded claim, Epps v. Gober, 126 F.3d 1464 (Fed. Cir. 1997), we

---

[**]  38 U.S.C. § 5107(b) (1994) provided:

> When, after consideration of all evidence and material of record in a case before the Department with respect to benefits under laws administered by the Secretary there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant.  Nothing in this subsection shall be construed as shifting from the claimant to the Secretary the burden specified in subsection (a) of this section.

(emphasis added).  At the time Kelly filed his claim, this identical language was codified at 38 U.S.C. § 3007(b).  After enactment of the VCAA, the language of section 5107(b) was revised as follows:

> Benefit of the doubt. – The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary.  When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

38 U.S.C. § 5107(b) (2000) (emphasis added).

have never held that the VA does not have to consider all evidence of record before making that determination.[***]

Moreover, it is wholly irrelevant to our analysis whether Kelly will prevail on his service-connection claim on remand. In awarding attorneys' fees and expenses under EAJA, the inquiry is whether he was a prevailing party in his "civil action," not whether he ultimately prevails on his service connection claim. Former Employees of Motorola, 336 F.3d at 1366; see also Johnson v. Gonzales, 416 F.3d 205 (3d Cir. 2005); Muhar v. Ashcroft, 382 F.3d 653 (7th Cir. 2004). Kelly prevailed in his civil action by securing a remand requiring consideration of his ataxia diagnosis. To impose a requirement that the veteran must succeed on his underlying benefits claim to prevail before the Veterans Court would defy precedent and logic. Indeed, where the VA has breached its duty to assist the veteran and failed to develop a claim, or as in this case failed to consider all evidence supporting a claim, the Veterans Court will necessarily remand the case to the agency. Cf. Swiney v. Gober, 14 Vet. App. 65, 70 (2000) (noting that "outright reversal on the merits has been very rare" in the Veterans Court). If the veteran prevails on remand, the case will never return to the Veterans Court. Thus, if

---

[***] The dissent misreads our opinion as ignoring Vaughn in favor of Former Employees of Motorola, observing that the latter is only applicable when the remand is premised on agency error. We fully recognize the "vital difference" between these cases, and we have clearly set forth the agency error giving rise to the analysis under Former Employees of Motorola, namely the VA's failure to consider all evidence and material of record before deciding a material issue on the merits. The dissent fails to explain why this recognition of error is wrong, instead maintaining that Kelly never presented his "ataxia claim" to the board. As we have explained, however, his ataxia diagnosis was not an independent claim; it was merely a diagnosis in support of his claim for service connection. Had the VA considered this ataxia evidence (as it was required to by statute), the appeal to the Veterans Court may not have been required. As such, the remand was due to the agency's error.

prevailing on the merits of the benefits claim before the Veterans Court were required, there would rarely be a prevailing party despite potentially widespread agency error and the purposes of EAJA would be eviscerated. In such circumstances as here, the veteran has already prevailed in the civil action before the Veterans Court by obtaining a remand in light of the agency's error. Former Employees of Motorola, 336 F.3d at 1365.

With respect to the requirement that the remand must require further agency proceedings, Former Employees of Motorola, 336 F.3d at 1366, there can be no doubt that it was satisfied here with respect to Kelly's ataxia diagnosis. The remand order stated: "If [he] raises to the Board an argument that his ataxia resulted in his symptoms, the Board (and RO, after any appropriate remand thereto) must consider that argument. In addition, . . . the Board (and the RO) must fully develop the ataxia matter as well as his OPCA claim in accordance with 38 U.S.C. §§ 5103(a) and 5103A and 38 C.F.R. § 3.159 before readjudicating the case, and then must reach a conclusion on that matter." Ataxia Remand Order at 3 (citations omitted). Then, in denying attorneys' fees, it stated that "the Court's February 2004 order imposed no requirement upon the Board on remand with respect to the ataxia matter unless the appellant first raised clearly an argument that his symptoms were attributable to ataxia." EAJA Order at 6.

First, as noted above, Kelly does not have an "ataxia claim," only a service connection claim. This claim was presented to the RO and the board, and Kelly also presented medical evidence of his ataxia diagnosis supporting it. Thus, the remand could not have been correctly premised on the ground that he had never presented an "ataxia claim" to the RO or board. Moreover, although the court construed its remand

order as merely offering Kelly the option of pursuing his claim on remand in light of his ataxia diagnosis, such a distinction is trivial. Of course Kelly would pursue his ataxia argument on remand, as he has been for over fifteen years. However, whether he would pursue his ataxia argument on remand is irrelevant because a party securing a remand always has the option of pursuing or abandoning the case. Such an option does not mean that a remand order does not require further agency action. It would be incongruous to allow courts to make an end run around the purposes underlying EAJA by making such trivial distinctions and masking its actions in artfully worded orders. Here, the court erred by doing just that.

Finally, we conclude that the government's position was not substantially justified so as to prohibit the award of fees. 28 U.S.C. § 2412(d)(1)(A). In considering whether its position was substantially justified, we consider not only "the position taken by the United States in the civil action, [but also] the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). Kelly presented evidence of his ataxia diagnosis in support of his service connection claim, and this evidence was ignored by the agency in denying it. Such a failure to consider evidence of record cannot be substantially justified.

In light of the foregoing, we reverse the Veterans Court's denial of fees and expenses. On remand, the fees and expenses awarded will include those incurred in pursuing the EAJA action. Former Employees of Motorola, 336 F.3d at 1368 n.3.

## Conclusion

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is reversed and the case is remanded for further proceedings in accordance with this opinion.

<u>REVERSED AND REMANDED</u>

# United States Court of Appeals for the Federal Circuit

05-7116

WILLIAM J. KELLY,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

RADER, <u>Circuit Judge</u>, dissenting.

This court's decision defies both the United States Supreme Court's, <u>Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598 (2001), and this court's own precedent, <u>Vaughn v. Principi</u>, 336 F.3d 1351 (Fed. Cir. 2003), on the "prevailing party" rule of EAJA. The United States Court of Appeals for Veterans Claims (Veterans Court) correctly determined that Mr. Kelly was not a prevailing party because his case was simply remanded after a change in the statute. Mr. Kelly did not obtain any relief on the merits of his claim. Because the Veterans Court properly applied the law and this court has departed from that law without justification, I must respectfully dissent.

Mr. Kelly's original claim for OPCA was dismissed as not well-grounded. Later, the Veterans Claims Assistance Act of 2000, Pub.L.No. 106-475, 114 Stat. 2096 (VCAA) eliminated the well-grounded claim requirement. Thus, the Veterans Court reconsidered and then remanded the claim to the Board for adjudication under the new law. At this time, the Veterans Court also noted that it lacked jurisdiction over Mr. Kelly's cerebellar ataxia claim because Mr. Kelly had not filed a valid Notice of

Disagreement (NOD). In other words, he had never presented the claim to the Board at all.

Several months later, the Veterans Education and Benefits Expansion Act of 2001, Pub. L. No. 107-103, §603(a), 115 Stat. 976, 999, repealed section 402 of the Veterans Judicial Review Act, which required a NOD for Veterans Court jurisdiction. This change in law permitted Mr. Kelly to reinstate his appeal for cerebellar ataxia service connection without a NOD. After this statutory change brought a remand, Mr. Kelly seeks attorney fees as a prevailing party.

A mere remand based on a change in law, however, does not constitute a victory on the merits entitling him to any relief on his claim or to attorney fees. This remand, like the similar actions in Buckhannon and Vaughn, does not mean that Mr. Kelly prevailed in any sense, let alone on the merits of his cerebellar ataxia claim.

In Buckhannon, the Supreme Court stated that a party only prevails upon receipt of "a judgment" which provides "some relief on the merits of their underlying claim." 532 U.S. at 603. Mr. Kelly has not received either a judgment or relief on any merits of his cerebellar ataxia claim. In Buckhannon, as in this case, the Court dismissed a case because the state legislature changed the law and thus rendered the claim moot. Id. Buckhannon argued that litigation had served as a catalyst for the change in law and this dismissal. Id. at 601-02. To the contrary, the Supreme Court found the catalyst theory insufficient because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." Id. at 605.

In Vaughn, 336 F.3d at 1355, citing Brickwood Contractors, Inc. v. United States, 288 F.3d 1371 (Fed Cir. 2002), this court applied Buckhannon to EAJA. Vaughn then

concluded, in circumstances indistinguishable from this case, that a remand because of a change in statute does not mean that a party has prevailed. Vaughn v. Principi, 336 F.3d at 1355.

Vaughn's claim involved an appeal from a denial of service connection benefits. Id. at 1353. After enactment of the VCAA, Vaughn received a remand. These facts mirror the pertinent facts in Mr. Kelly's situation. Although Vaughn's remand "achieved a desired result," id. at 1355-56, this court denied attorneys fees:

> This court agrees with the Veteran's Court's conclusions that appellant's remands are not judgments on the merits or consent decrees or similar results that qualify as prevailing under EAJA [Equal Access to Justice Act] This court further holds that the catalyst theory is an improper basis for an award of attorney fees as a "prevailing party" under EAJA.

Id. at 1357. By the same token, Mr., Kelly has not received a judgment on the merits or any similar result.

This court today ignores Vaughn, which is directly on point, and cites to Former Employees of Motorola Ceramic Products v. United States, 336 F.3d 1360, 1364 (Fed. Cir. 2003). These two cases, decided on the same day, contain a vital difference. In Former Employees of Motorola, this court indeed conferred prevailing party status on a litigant after a remand. Id. at 1366. The litigant in Former Employees of Motorola, however, had overturned an alleged agency error to obtain the remand. 336 F.3d at 1367-68. Mr. Kelly, however, like Vaughn, obtained a remand based on a change in law, not based on any proof of agency error.

The Veterans Court specifically found no Board error on Kelly's ataxia claim. Majority Opinion, 4. In fact, the Board could not have erred. Mr. Kelly had never presented a claim to the Board. The issue Mr. Kelly appealed to the Veterans

Court was not a Board denial of his cerebellar ataxia claim. He appealed the Board's denial of his original claim for OPCA and raised the cerebellar ataxia claim for the first time on appeal. The Veteran's Court explained:

> [B]ecause the appellant never presented an ataxia claim argument to the [regional office] or the Board the Court will not entertain this argument in the first instance . . . if the appellant raises to the Board an argument that his ataxia resulted in his symptoms, the Board (and the [regional office], after an appropriate remand thereto) must consider the argument.

Kelly v. Principi, No. 99-191 (Ct. App. Vet. Cl. Feb. 6, 2004). Thus, because Mr. Kelly never presented the Board with any argument on cerebellar ataxia, the Board could not have made a mistake with respect to an argument not presented.

Here, the Veterans Court remanded to provide Mr. Kelly a chance to raise his cerebellar ataxia claim in the first instance. As a result of change in law, Mr. Kelly may now proceed without a proper NOD. At no point, however, had the Board erred or had Mr. Kelly overturned a legal error. Rather, the law changed, as in Buckhannon and Vaughn. As a result of this change in the law, the Veterans Court reinstated his appeal without deciding any merits or conferring a judgment on the merits. I can see no alternative other than that the law of Buckhannon and Vaughn govern this case.